UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL KRIPKE,<br><br>            Plaintiff,<br><br>      v.<br><br>SAFEWAY, INC., et al.,<br><br>            Defendants. | Case No. 3:18-cv-02808-WHO<br><br>**ORDER GRANTING MOTION TO REMAND**<br><br>Re: Dkt. No. 12 |

**INTRODUCTION**

Daniel Kripke, a professor and practitioner of psychiatry, moves to remand this case to state court, where he filed this complaint against Teva Pharmaceuticals USA, Inc. ("Teva") and Safeway, Inc. ("Safeway") concerning Teva's manufacturing and distributing, and both parties' selling, of zolpidem tartrate, the generic version of the sleep aid known by the brand name Ambien. Kripke alleges that zolpidem causes significant health risks, is ineffective in its purported treatment of insomnia, leads to higher risk that he might be the victim of a vehicle-pedestrian accident, and effectuates competitive injury to his non-drug treatment methods for insomnia.

Defendants removed his complaint based on both federal question and diversity jurisdiction. They claim that Kripke's state law claims necessarily raise substantial and disputed questions of federal law related to drug manufacturers. Alternatively, they assert diversity jurisdiction because Safeway, a company with its principal place of business in California, was fraudulently joined. But because Kripke only asserts state law causes of action, and each of them—one under the UCL's unlawful prong, another under the UCL's unfairness prong, a nuisance claim, and a common law unfair competition claim—can be decided without necessarily

1  addressing a substantial issue of federal law, there is no federal question jurisdiction. And

2  Safeway was not fraudulently joined in this action. There is no diversity jurisdiction.

3  Accordingly, I have no subject matter jurisdiction over this case, and it must be remanded to state

4  court. Kripke's motion to remand is GRANTED.

**BACKGROUND**

5

6  **I.      FACTUAL BACKGROUND**

7          **A.      Allegations**

8          Daniel Kripke, an Emeritus Professor at the University of California, San Diego

9  Department of Psychiatry, alleges that Teva and Safeway (collectively, "defendants") should be

10  held liable under certain state laws for manufacturing, distributing and/or selling (in Safeway's

11  case) a generic version of zolpidem tartrate, which is also known by brand names Ambien,

12  Intermezzo, and Zolpimist. Compl. ¶¶ 3, 12–13 [Dkt. No. 1-3]; Notice of Removal ¶ 1 [Dkt. No

13  1]. Zolpidem is a prescription drug indicated for the short term treatment of insomnia. *See*

14  Compl. ¶ 19.

15          Kripke refers to zolpidem as a "hypnotic drug[,]" and hypnotic drugs "greatly increase all-

16  cause mortality and in particular cause an excess of deaths at night." *Id*. ¶¶ 7, 17. "Hypnotic

17  drugs cause death from respiratory depression, cancer, infection, accidental death, and suicide."

18  *Id*. ¶ 18. Kripke cites clinical trials and epidemiologic data demonstrating increased rates of

19  infection, cancer, and depression among individuals using hypnotics, including zolpidem. *Id*. ¶¶

20  17–31. And he indicates that zolpidem impairs drivers' ability to safely operate motor vehicles,

21  which impacts him personally. *Id*. ¶¶ 32–36; *id*. ¶¶ 83–89 (describing increased risk to him and

22  his family).

23          On top of these side effects, Kripke alleges that zolpidem is not effective in increasing

24  productive sleep and is frequently prescribed without an insomnia diagnosis, in part due to

25  misrepresentations in advertising. Compl. ¶¶ 39–54. He proposes that any purported benefit is

26  outweighed by the documented harms. *Id*. ¶¶ 55–63.

27          Kripke brings four causes of action against Safeway and Teva: (i) unfair business practice

28  in violation of California's Unfair Competition Law (UCL); (ii) unlawful business practice in

1   violation of the UCL; (iii) nuisance in violation of Cal. Civ. Code §§ 3479-3493, and (iv) common

2   law unfair competition.  Compl. ¶¶ 91-119.  His first cause of action alleges that defendants'

3   business acts are unfair in violation of the UCL because the conduct is "immoral, unethical,

4   unscrupulous, and substantially injurious to consumers, and the utility of their conduct does not

5   outweigh the gravity of the harm [to] Dr. Kripke, his family, and the public."  Compl. ¶ 64, 93.

6   Additionally, defendants' conduct allegedly violates "public policy as declared by specific

7   constitutional, statutory, or regulatory provisions, including 21 U.S.C § 393(b)(2), which describes

8   federal public policy that "drugs [be] safe and effective[,]" and California's Health and Safety

9   Code.   *Id.* ¶¶ 66, 94.  Finally, it allegedly violates California and United States public policy by

10  causing California and the United States to pay for zolpidem via Medicare, Medicaid, Affordable

11  Care Act exchange subsidies, veterans' health programs, public employee and retiree health

12  insurance, despite evidence that it is "neither effective nor safe."  *Id*. ¶ 67.

13          Kripke's second cause of action alleges that Teva's business acts are unlawful in violation

14  of the UCL because Teva failed to comply with 21 C.F.R. § 314.80(b), which requires it to

15  "promptly review all adverse drug experience information obtained or otherwise received by the

16  applicant from any source, foreign or domestic, including information derived from commercial

17  marketing experience, postmarketing clinical investigations, postmarketing

18  epidemiological/surveillance studies, reports in the scientific literature, and unpublished scientific

19  papers."  Compl. ¶¶ 71, 99.  Teva's conduct also allegedly violates 21 C.F.R. § 314.80(c), which

20  requires it to report each adverse drug experience to the FDA and investigate all adverse drug

21  experiences. *Id.* ¶¶ 72-74. 100–102.  Additionally, Teva allegedly failed to comply with 21 C.F.R.

22  § 314.81, which requires it to report significant new information to the FDA from the previous

23  year that might affect the safety, effectiveness, or labeling of the drug product. *Id.* ¶¶ 75, 103.

24  Kripke also cites "21 U.S.C. § 352(f), which renders a drug misbranded unless 'its labeling bears

25  (1) adequate direction for use; and (2) such adequate warnings against use in those pathological

26  conditions or by children where its use may be dangerous to health, or against unsafe methods of

27  duration of administration or application, in such manner and form, as are necessary for the

28  protection of user." *Id*. ¶¶ 77, 105.

3

1 Both defendants' conduct allegedly violates the California Sherman Food, Drug, and

2 Cosmetic Law ("Sherman Law"), Cal. Health & Safety Code § 110110, which adopts all FDA

3 regulations as state regulations, and Civil Code § 3479, which prohibits any activity "which is

4 injurious to health…so as to interfere with the comfortable enjoyment of life or property." *Id.* ¶¶

5 78, 106–07. According to Kripke, defendants' conduct enabled them to sell more units of

6 zolpidem than they would have otherwise at a higher price with a higher margin. *Id.* ¶ 108. He

7 contends that he "has suffered competitive economic injury as a specialist physician who treats

8 sleep disorders using non-drug methods, who sells a book advising individuals about non-drug

9 treatment of insomnia, and who is active in developing light therapy devices to treat sleep

10 disorders." *Id.* ¶ 90.

11 His UCL claims seek disgorgement, restitution, and an order "enjoining Defendants from

12 continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and

13 to commence a corrective advertising campaign." Compl. ¶¶ 109; *id.* ¶¶ 96–97.

14 Kripke's third cause of action alleges a violation of California's public nuisance law under

15 Cal. Civ. Code §§ 3479-3493. Compl. ¶¶ 111–17. He alleges that zolpidem is a dangerous and

16 ineffective drug and that defendants' actions create a harmful condition that is injurious to the

17 health of the public and affects a substantial number of people, interferes with the public's interest

18 in having only safe, effective drugs available for purchase, and is a menace to the public health

19 and to any person using the public roadways. *Id.*

20 Kripke asserts a fourth cause of action for common law unfair competition because

21 defendants' conduct unfairly injured him in his profession and the people of California in their

22 health and welfare, with no offsetting benefit. *Id.* ¶¶ 118-19.

23 **B. Regulatory Framework**

24 The Federal Food, Drug, and Cosmetic Act (FDCA) established the Food and Drug

25 Administration's (FDA) authority to regulate the approval of both brand name and generic drugs.

26 *See* 21 C.F.R. § 314.50(c)(2)(i)(brand name); 21 C.F.R. § 314.94(a)(8)(generic). A manufacturer

27 seeking FDA approval to market a new drug must first demonstrate that the drug is safe and

28 effective and that its proposed labeling is accurate and adequate by filing a New Drug Application

4

1 (NDA).  *See* 21 U.S.C. § 355(b)(1); *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 612 (2011).  In 1984,

2 "Congress passed the Drug Price Competition and Patent Term Restoration Act, 98 Stat. 1585,

3 commonly called the Hatch–Waxman Amendments[,]" under which "'generic drugs' can gain

4 FDA approval simply by showing equivalence to a reference listed drug that has already been

5 approved by the FDA."  *Id*. (citing 21 U.S.C. § 355(j)(2)(A)).  Generic drug manufacturers can get

6 approval by submitting an Abbreviated New Drug Application (ANDA) showing that its drug is

7 identical to a brand name drug.  21 U.S.C. § 355(j)(2)(A).

8 **C.     Request for Judicial Notice**

9 Defendants request judicial notice of the following: (1) Kripke's Citizen's Petition to the

10 FDA (RJN, Ex. A); (2) the FDA's interim response to Kripke's Citizen Petition (RJN, Ex. B); (3)

11 publically available information regarding NDA #019908 relating to Lorex Pharmaceutical's

12 original NDA's approval for Ambien; and (4) publicly available information regarding Teva's

13 ANDA #076410 and the list of ANDA holders for "zolpidem tartrate" (RJN, Ex. D).  Kripke

14 objects because exhibits B, C, and D contain hearsay and he disputes the facts contained within

15 the documents.  Opp'n to RJN [Dkt. No. 21].

16 "[J]udicial notice of matters of public record is limited to the existence and authenticity of

17 a document; the veracity and validity of the contents remain open to dispute." *Lifescan Scotland,*

18 *Ltd. v. Shasta Techs.*, *LLC*, No. 5:11-CV-04494 EJD, 2012 U.S. Dist. LEXIS 100549, at *13

19 (N.D. Cal. July 19, 2012) (quoting another source).  "[C]ourts take judicial notice of documents

20 which are matters of public record such as Securities and Exchange Commission filings, court-

21 filed documents, and Federal Drug Administration reports published on the FDA website. Such

22 notice serves only to indicate what was in the public realm at the time, not whether the contents of

23 those documents are true." *United States ex rel. Spay v. CVS Caremark Corp.*, 913 F. Supp. 2d

24 125, 139 (E.D. Pa. 2012) (citations omitted).

25 Because the fact of these filings and publicly available information cannot reasonably be

26 disputed, they are appropriate for judicial notice under Federal Rule of Evidence 201.  Defendants'

27 request is GRANTED.

28

5

1  **II.  PROCEDURAL HISTORY**

2      On April 11, 2018, Kripke filed this action in the Superior Court of San Francisco County,

3  California, against Safeway and Teva pertaining to Teva's manufacture of the generic drug

4  zolpidem and Safeway's sale of the drug.  Notice of Removal ¶ 1 ("NOR")[Dkt. No. 1].  On May

5  11, 2018, defendants removed the action from state court to the United States District Court for

6  the Northern District of California based on two separate grounds under 28 U.S.C. § 1441: (1)

7  federal question and supplemental jurisdiction under 28 U.S.C. §§ 1331 and 1367; and (2)

8  diversity jurisdiction under § 28 U.S.C. § 1332(a) as a civil action between citizens of different

9  states in which the amount in controversy exceeds the sum of $75,000, exclusive of interests and

10  costs, purportedly because Safeway was fraudulently joined.  NOR ¶ 5; *id*. ¶¶ 24–31.

11      On May 18, 2018, defendants filed a motion to dismiss and a motion to strike.  [Dkt. Nos.

12  9, 10].  On May 23, 2018, Kripke filed the instant motion to remand to state court.  Mot. to

13  Remand ("Mot.")[Dkt. No. 12].  He also sought to continue briefing on the motions to dismiss and

14  strike so that his remand motion could be heard first.  [Dkt. No. 13].  I denied that request and set

15  the hearing on all three motions for the same day.  [Dkt. No. 15].  Kripke thereafter filed his

16  oppositions to the motions indicating that he intended to file an amended complaint.  [Dkt. Nos.

17  16, 17].

18      On June 8, 2018, Kripke filed a first amended complaint.  First Am. Compl. ("FAC")[Dkt.

19  No. 19].  The amended complaint mooted defendants' motions to dismiss and strike.  This order

20  will nonetheless analyze the claims in his state complaint since the presence of removal

21  jurisdiction is determined at the time of removal.  *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63

22  (1987); *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996).

23                          **LEGAL STANDARD**

24      Under 28 U.S.C. § 1441(b), a defendant in state court may remove an action to federal

25  court if the action could have originally been filed in federal court.  *Hunter v. Philip Morris USA*,

26  582 F.3d 1039, 1042 (9th Cir. 2009).  The defendant has the burden of proving the basis for the

27  federal court's jurisdiction, and, generally, "the removal statute is strictly construed against

28  removal jurisdiction."  *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n.3 (9th

1    Cir. 1990); *see also Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941).

2         Original jurisdiction may be based on a federal question or diversity.  *See Caterpillar Inc.*

3    *v. Williams*, 482 U.S. 386, 392 (1987).  Federal question jurisdiction exists if the case "aris[es]

4    under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  For an action to

5    be removed on the basis of federal question jurisdiction, the complaint must establish either that

6    federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on

7    the resolution of substantial questions of federal law.  *See Franchise Tax Board of Cal. v.*

8    *Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 10-11 (1983).  The "well-

9    pleaded complaint" rule requires a federal question to be presented on the face of the plaintiff's

10   complaint at the time of removal for federal-question jurisdiction to exist.  *Metro. Life Ins. Co*,

11   481 U.S. at 63; *Duncan*, 76 F.3d at 1485.  To determine whether a case "arises under" federal law,

12   federal courts look solely to allegations of plaintiff's complaint that are necessary or essential to

13   the cause of action.  *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 112 (1936).

14        Diversity jurisdiction exists if the opposing parties are citizens of different states and the

15   amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a).  Removal jurisdiction based on §

16   1332 "requires complete diversity of citizenship[,]" *Morris v. Princess Cruises, Inc.*, 236 F.3d

17   1061, 1067 (9th Cir. 2001), and "may not be removed if any of the parties in interest properly

18   joined and served as defendants is a citizen of the State in which such action is brought."  28

19   U.S.C. § 1441(b)(2).

20        "If at any time before final judgment it appears that the district court lacks subject matter

21   jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).  "Federal jurisdiction must be

22   rejected if there is any doubt as to the right of removal in the first instance."  *See Gaus v. Miles,*

23   *Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  "The court may – indeed must – remand an action *sua*

24   *sponte* if it determines that it lacks subject matter jurisdiction."  *Canterbury Lots 68, LLC v. De La*

25   *Torre*, 2013 WL 781974, at *1 (C.D. Cal. Feb. 28, 2013)(citing *Kelton Arms Condo. Owners*

26   *Ass'n v. Homestead Ins. Co.*, 346 F.3d 1190, 1192 (9th Cir. 2003)("[T]he district court must

27   remand if it lacks jurisdiction.")).

28

**DISCUSSION**

Defendants cite both federal question and diversity jurisdiction as grounds for removal. "[J]urisdiction must be analyzed on the basis of the pleadings filed at the time of removal without reference to subsequent amendments." *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998), *abrogated on other grounds by Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562 (2016). "[P]ost-removal amendments to the pleadings cannot affect whether a case is removable, because the propriety of removal is determined solely on the basis of the pleadings filed in state court." *Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 976 (9th Cir. 2006). For this reason, the analysis will focus on the state court complaint, but I note that the FAC does not appear materially different from the state court complaint.

**I.      FEDERAL QUESTION JURISDICTION**

A case "arises under" federal law "when federal law creates the cause of action asserted[,]" or when a state law claim depends on a federal issue that is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). Kripke argues that this Court lacks federal question jurisdiction because federal law is not a necessary element of any of his claims. Defendants counter that Kripke's complaint necessarily raises federal questions regarding Teva's labeling, branding, manufacture, and post-approval reporting to the FDA—all federal duties and obligations imposed by federal statutes and regulations under the Hatch Waxman Amendments.

**A.      Whether Federal Law "Creates" Kripke's Claims**

The "well-pleaded complaint" rule requires a federal question on the face of the plaintiff's complaint at the time of removal for federal-question jurisdiction to exist. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987); *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996). A case arises under federal law if a federal law is necessary or essential to the cause of action as alleged in a plaintiff's complaint. *Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936). A claim supported by alternate theories is not sufficient for federal question jurisdiction unless federal law is essential

8

to each of those theories. *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 810 (1988). Where several claims are joined in the complaint, and alternative state law theories exist for each of those claims, there is no federal question jurisdiction. *Duncan v. Stuetzle*, 76 F.3d 1480, 1486 (9th Cir. 1996).

Kripke's complaint alleges (1) unfair business practices in violation of the UCL; (2) unlawful business practices in violation of the UCL; (3) a violation of California' nuisance law; and (4) common law unfair competition. Defendants argue that federal questions are presented on the face of Kripke's complaint because he repeatedly cites federal authority as a basis for his claims. Opp'n. at 6; *see* Compl. ¶¶ 66, 70–75, 77 (citing violations of Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 331, 352(f), 393(b)(2); 21 C.F.R. § 314.98; 21 C.F.R. § 314.80(b), (c); 21 C.F.R. § 314.81). According to defendants, "this case turns on whether Teva violated federal law and regulations." Opp'n. at 7. Kripke counters that no federal question jurisdiction exists because his claims are supported by alternative and independent state law theories. Mot. at 7–9. Specifically, he contends that federal law is not a necessary element to his UCL claims because they can be resolved showing only violations of state law or using California's balancing test standard for determining unfair business practices. Mot. at 8.

Defendants cite *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831 (9th Cir. 2004), to insist that a federal issue is presented on the face of Kripke's complaint notwithstanding his four state law causes of action. Opp'n at 5–6. In *Lockyer*, "California chose the forum of its own state courts by stating its claims exclusively under California unfair competition laws, … and alleging that the companies converted generation capacity contractually owed to the state." *Id*. at 839. But the complaint did not "disguise the fact" that the obligations were contained within tariffs that were the "equivalent of a federal regulation." *Id*. (quoting another source in part). The Ninth Circuit affirmed the district court's denial of California's remand motion because it found that "relief [was] 'predicated on a subject matter committed exclusively to federal jurisdiction.'" *Id*. at 841. In short, "[t]he state lawsuit turn[ed], *entirely*, upon the defendant's compliance with a federal regulation." *Id*. (emphasis added). "Absent a violation of the FERC-filed tariff, no state law liability could survive." *Id*.

9

1   That said, a plaintiff's "repeated references" to federal law in his state law cause of action

2   "does not mean that [federal law] creates the cause of action under which [plaintiff] sues." *ARCO*

3   *Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl. Quality of Montana*, 213 F.3d 1108, 1113

4   (9th Cir. 2000); *see also Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 344 (9th Cir. 1996)("The direct

5   and indirect references to Title VII in those two state law causes of action do not make those

6   claims into federal causes of action."). Kripke's state law claims are not transformed into federal

7   causes of actions merely based on their "repeated references" to the FDCA and its implementing

8   regulations. *See, e.g.*, *Streed v. Eon Labs, Inc.*, No. 17-CV-02609-MMC, 2017 WL 3616591, at

9   *3 (N.D. Cal. Aug. 23, 2017)(noting the same); *Guerra v. Carrington Mortg. Servs. LLC*, No. CV

10  10-4299 GAF (Ex), 2010 U.S. Dist. LEXIS 70520, at *4-5 (C.D. Cal. June 29, 2010)( "California

11  district courts have held that mere references to federal law in UCL claims do not convert the

12  claim into a federal cause of action."); *id.* at *5 (listing cases); *Perez v. Nidek Co.*, 657 F. Supp. 2d

13  1156, 1161 (S.D. Cal. 2009)("[F]ederal question jurisdiction is not created by the fact that

14  Plaintiffs' state law claims under the CLRA and UCL hinge upon alleged violations of the FDCA

15  and its regulations."). "As the master of the complaint, a plaintiff may defeat removal by

16  choosing not to plead independent federal claims[,]" but "under the artful pleading rule 'a plaintiff

17  may not defeat removal by omitting to plead necessary federal questions in a complaint.'" *ARCO*

18  *Envtl. Remediation*, 213 F.3d at 1114.

19  As discussed below, Kripke's claims do not turn entirely on federal law; he can establish

20  state law liability without a corresponding violation of federal law.

21  **B.    Whether Federal Issues Within State Law Claims Dictate Federal Question Jurisdiction**

22

23  "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily

    raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without

24  disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258

25  (2013). "Where all four of these requirements are met, … jurisdiction is proper because there is a

26  "'serious federal interest in claiming the advantages thought to be inherent in a federal forum,'

27  which can be vindicated without disrupting Congress's intended division of labor between state

28

10

1  and federal courts." *Id*. (quoting *Grable*, 545 U.S. at 313–314).

2            **1.**      **"Necessarily Raised"**

3          "California district courts have held that mere references to federal law in UCL claims do

4  not convert the claim into a federal cause of action." *Nevada v. Bank of Am. Corp.*, 672 F.3d 661,

5  675 (9th Cir. 2012)(quoting *Guerra v. Carrington Mortg. Servs. LLC,* 2010 WL 2630278, at \*2

6  (C.D.Cal. June 29, 2010)).  The court in *Guerra* found that federal law was not a necessary

7  element of plaintiff's UCL claim, and no substantial question of federal law existed:

8               Plaintiffs allege twenty-one separate violations of Section 17200,

9               which include fifteen violations of California law, three RICO
             violations, one FDCPA violation, and two federal civil rights

10               violations. (Compl. p. 113.) Only six of the alleged violations arise
             out of federal law and Plaintiffs may therefore prevail on their UCL

11               claim pursuant to any one of the fifteen alleged state law violations.
             In this instance, the federal statutes serve merely as an alternative
             and independent legal theory.

12  *Id*. at \*8.

13          Kripke's unlawful prong-UCL claim recites four provisions of federal law (21 C.F.R. §

14  314.80(b), 21 C.F.R. § 314.80(c), 21 C.F.R. § 314.81 and 21 U.S.C. § 352(f)), and two provisions

15  of state law (Cal. Health & Safety Code § 110110 and Cal. Civ. Code § 3479).  In one sense,

16  unlike the plaintiff in *Guerra*, he does not merely reference federal law, he relies on it.  His

17  unlawful claim is based on his allegations that Teva violated 21 U.S.C. § 352(f) regarding the

18  labeling of zolpidem, that Teva allegedly failed to investigate and report adverse drug events as

19  required by 21 C.F.R. § 314.80(b) and (c), and that Teva failed to submit quarterly and annual

20  reports to the FDA.

21          Despite his repeated references to federal law, Kripke insists that his claims could be

22  resolved under state law theories without reference to federal law.  "When a claim can be

23  supported by alternative and independent theories—one of which is a state law theory and one of

24  which is a federal law theory—federal question jurisdiction does not attach because federal law is

25  not a necessary element of the claim." *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346 (9th Cir.

26  1996).

27          Defendants urge that Kripke's reliance on *Rains* is misplaced because "his claims are

28  neither state-law based nor merely referencing federal obligations in passing."  Opp'n. at 7.  In

*Rains*, an employee brought claims against his employer for wrongful termination in violation of public policy and intentional interference with contractual relations. 80 F.3d at 342. His claims were based in part on his employer's alleged violation of Title VII of the Civil Rights Act of 1964's policy against religious discrimination. *Id*. at 341. The court found that federal question jurisdiction was lacking because (1) federal law did not create his causes of action, (2) neither of the state law claims should have been re-characterized under the artful pleading doctrine as federal claims, and (3) neither of the "state law claims necessarily turned on the construction of a substantial, disputed federal question." *Id*. at 343. In analyzing the third issue, the court concluded that "Title VII is not a 'necessary element' of the state law claim because state law independently espouses the same public policy established by Title VII." *Id*. at 345.

Defendants argue that, unlike in *Rains*, the "whole thrust" of Kripke's claims is centered on the manufacture, sale, and distribution of zolpidem—actions that are governed by federal statutes, regulations, and duties. Opp'n. at 7. This is only partially true. It is equally true that Kripke's claims are "supported by alternative and independent theories[.]" 80 F.3d at 346. Kripke alleges two California laws underlying his UCL claims: the Sherman Law under California Health & Safety Code § 110110,[1] which is the state analog to the FDA, *and* California Civil Code § 3479, which prohibits any activity "which is injurious to health…so as to interfere with the comfortable enjoyment of life or property." *See* Compl. ¶¶ 106-07.

If there is a question whether those state laws "can and do[] serve the same purpose" as the federal laws he relies on, *Rains*, 80 F.3d at 345, that does not alter the conclusion that his claims "*can* be supported by an independent state theory..." *Id*. at 347 (emphasis added). Indeed, the Supreme Court's decision in *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804 (1986) is on point. There, the Court addressed "whether the incorporation of a federal standard in a state-law private action, when Congress has intended that there not be a federal private action for violations of that federal standard, makes the action one 'arising under the Constitution, laws, or treaties of

---

[1] The code provision explicitly adopts the regulations adopted pursuant to the federal act and allows for regulations "whether or not the regulation is in accordance with the regulations adopted pursuant to the federal act." Cal. Health & Safety Code § 110110(b).

1   the United States,' 28 U.S.C. § 1331." *Id*. at 805. The Court was presented with the question in

2   the precise context of this case, with state law claims being based in part on violations of the

3   FDCA. It answered in the negative. *Id*. at 805–06; *id*. at 817. On the question of whether the

4   state law causes of action presented a "substantial, disputed question of federal law[,]" the court

5   "conclude[d] that the congressional determination that there should be no federal remedy for the

6   violation of this federal statute is tantamount to a congressional conclusion that the presence of a

7   claimed violation of the statute as an element of a state cause of action is insufficiently

8   'substantial' to confer federal-question jurisdiction." *Id*. at 814.

9        Defendants insist that *Merrell Dow* is distinguishable because Kripke alleges express,

10  rather than "potential," violations of federal laws, and further, that the *Merrell Dow* court noted

11  the need for "principled, pragmatic distinctions" and "careful judgments about the exercise of

12  federal judicial power in an area of uncertain jurisdiction." Opp'n. at 11–12 (quoting *Merrell*

13  *Dow*, 478 U.S. at 814). The former argument gets them nowhere because all of Kripke's

14  allegations are "potential" unless defendants concede that they have violated the federal laws.

15       The second argument fails to get them much further. They highlight the Supreme Court's

16  excerpt from the underlying Sixth Circuit Court of Appeals opinion:

17
          Federal question jurisdiction would, thus, exist only if plaintiffs'
18        right to relief *depended necessarily* on a substantial question of
          federal law. Plaintiffs' causes of action referred to the FDCA merely
19        as one available criterion for determining whether Merrell Dow was
          negligent. Because the jury could find negligence on the part of
20        Merrell Dow without finding a violation of the FDCA, the plaintiffs'
          causes of action did not depend necessarily upon a question of
21        federal law. Consequently, the causes of action did not arise under
          federal law and, therefore, were improperly removed to federal
22        court.

23  *Merrell Dow*, 478 U.S. at 807 (quoting 766 F.2d 1005, 1006 (6th Cir. 1985)). They insist that this

24  case is one in which Kripke's "right to relief *depend[s] necessarily* on a substantial question of

25  federal law" and cite *Bowdrie v. Sun Pharm. Indus. Ltd.*, 909 F. Supp. 2d 179 (E.D.N.Y. 2012) for

26  support. In *Bowdrie*, the court concluded that federal law was a necessary element of plaintiffs'

27  state law claims (including strict product liability, negligence, fraud, breach of implied warranties,

28  negligence per se, and wrongful death) because they depended on the scope of defendants' duties

13

1  under the FDCA and Hatch-Waxman Amendments. *Id*. at 183–84.

2  The difference here is that Kripke offers alternative state-law bases for his claim under the

3  UCL's unlawful prong claim; his other three claims do not rely on federal law at all. *See* Compl.

4  ¶¶ 91–97; *id*. ¶¶ 111–119. Moreover, his independent state theory—that zolpidem is unsafe

5  irrespective of the federal regulations—is pleaded throughout his complaint.

6  These alternative state law bases mandate the conclusion that federal issues are not

7  *necessarily* raised here. *See, e.g.*, *Streed*, 2017 WL 3616591, at *4 (finding that "the first

8  requirement has not been met."); *David v. Medtronic, Inc.*, No. 13-CV-04441 DMG (CW), 2013

9  WL 12132038, at *4 (C.D. Cal. Aug. 6, 2013)("Plaintiffs' Complaint rests on 10 state law causes

10  of action, each of which can be resolved under state law without any determination under the

11  FDCA."); *Asahi Kasei Pharma Corp. v. Actelion Ltd.*, No. C 09-405 SI, 2009 WL 801555, at *4

12  (N.D. Cal. Mar. 25, 2009)("Here, plaintiff's UCL and FAL claims are not solely based on the

13  alleged FDCA violations, and instead the gravamen of those claims is that defendants falsely

14  stated that Tracleer and Ventavis were an appropriate combination therapy.").

15  Under the *Gunn* framework, when one factor is lacking, federal question jurisdiction does

16  not exist. *See Gunn*, 568 U.S. at 258. I will nonetheless proceed to address the remaining factors.

17  ### 2. "Actually Disputed"

18  The parties do not directly address this issue, but they appear to actually dispute the scope

19  of numerous federally-imposed obligations.

20  ### 3. "Substantial"

21  For a federal issue to be substantial, "it is not enough that the federal issue be significant to

22  the particular parties in the immediate suit[,]" rather, "[t]he substantiality inquiry under *Grable*

23  looks instead to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at

24  260. Defendants argue that the federal issues here are substantial because a decision will impact

25  not only Teva, but all manufacturers of zolpidem, and therefore, the federal system as a whole.

26  But defendants offer no reason "why the federal issue in this case is more substantial than

27  that in *Merrell Dow*." *Garrett v. Bumble Bee Foods, LLC*, No. 5:12-CV-02546-LHK, 2014 WL

28  5302090, at *4 (N.D. Cal. Oct. 16, 2014) (quoting *People v. Monster Beverage Corp.,* No. C 13–

14

1    2500 PJH, 2013 WL 5273000 (N.D. Cal. Sept. 18, 2013)).  As numerous other courts have

2    concluded, state law claims referencing alleged violations of the FDCA do not present a

3    "sufficiently substantial" issue to confer federal jurisdiction.  *E.g.*, *Streed*, 2017 WL 3616591, at

4    *5; *Garrett*, 2014 WL 5302090, at *4 ("Bumble Bee, however, has failed to show that the federal

5    issue in this case is sufficiently 'substantial' to warrant the exercise of federal jurisdiction.").

6            **4.      Congressional Intent to Preserve Balance of State and Federal Judicial
                        Balance**

7            As the Supreme Court noted "in exploring the outer reaches of § 1331, determinations

8    about federal jurisdiction require sensitive judgments about congressional intent, judicial power,

9    and the federal system." *Merrell Dow*, 478 U.S. at 810.  It explained,

> The significance of the necessary assumption that there is no federal
> private cause of action thus cannot be overstated. For the ultimate
> import of such a conclusion, as we have repeatedly emphasized, is
> that it would flout congressional intent to provide a private federal
> remedy for the violation of the federal statute. We think it would
> similarly flout, or at least undermine, congressional intent to
> conclude that the federal courts might nevertheless exercise federal-
> question jurisdiction and provide remedies for violations of that
> federal statute solely because the violation of the federal statute is
> said to be a "rebuttable presumption" or a "proximate cause" under
> state law, rather than a federal action under federal law.

*Id*. at 812 (footnote omitted).

        The *Streed* court concluded, "[w]ere the Court to find federal jurisdiction appropriate in
this instance, such ruling 'arguably would apply further,' [citation omitted] and essentially would
'invite all similar claims involving FDA-approved drugs into federal courts across the country[.]'"
2017 WL 3616591, at *5.  The same would be true here.  I cannot endorse this result.

**II.      DIVERSITY JURISDICTION**

        Kripke argues that diversity jurisdiction does not exist because Safeway's principal place
of business is in California, so there is no complete diversity between the parties.  Mot. at 12.
Defendants contend that Safeway's citizenship should be disregarded because it was fraudulently
joined; Kripke rsponds that he has stated colorable claims against Safeway, so defendants cannot
establish its fraudulent joinder.  Oppo. at 15–16; Reply at 9–11.

        Removal jurisdiction based on § 1332 "requires complete diversity of citizenship[,]"

15

United States District Court
Northern District of California

1    *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).  A case "may not be

2    removed if any of the parties in interest properly joined and served as defendants is a citizen of the

3    State in which such action is brought."  28 U.S.C. § 1441(b)(2).  "[O]ne exception to the

4    requirement of complete diversity is where a non-diverse defendant has been 'fraudulently

5    joined.'"  *Morris*, 236 F.3d at 1067.  "A district court may disregard a non-diverse party named in

6    the state court complaint and retain federal jurisdiction if the non-diverse party is joined as a sham

7    or if the joinder is fraudulent."  *Plute v. Roadway Package Sys., Inc.*, No. C-01-0353-SI, 141 F.

8    Supp. 2d 1005, 1008 (N.D. Cal. 2001) (citation omitted).

9           Joinder is fraudulent "[i]f the plaintiff fails to state a cause of action against a resident

10   defendant, and the failure is obvious according to the settled rules of the state."  *McCabe v.*

11   *General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).  There is a general presumption

12   against fraudulent joinder," and defendants who assert that a party is fraudulently joined carry a

13   "heavy burden."  *Hunter*, 582 F.3d at 1046.  Defendants must "show that the individuals joined in

14   the action cannot be liable on any theory," *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th

15   Cir. 1998), and that "there is no possibility that the plaintiff will be able to establish a cause of

16   action in state court against the alleged sham defendant," *Good v. Prudential Insurance Company*

17   *of America*, No. C-98-0894-CW, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998).  The Ninth Circuit has

18   "declined to uphold fraudulent joinder rulings where a defendant raises a defense that requires a

19   searching inquiry into the merits of the plaintiff's case, even if that defense, if successful, would

20   prove fatal."  *GranCare, LLC v. Thrower*, 889 F.3d 543, 548-49 (9th Cir. 2018).

21          Kripke contends that each of his claims against Teva apply equally against Safeway.  His

22   claim under the UCL's unfairness prong applies to "[a]ny person who engages ... in unfair

23   competition[,]" his unlawful-prong UCL claim is based in part on California Health and Safety

24   Code section 111440, which makes it illegal to "sell ... any drug ... that is misbranded, and his

25   nuisance claim prohibits activity that is "injurious to health."

26          Defendants highlight that "Safeway's sole alleged involvement is that, as a pharmacy, it

27   'sells' zolpidem."  Oppo. at 16.  And they cite *Murphy v. E. R. Squibb & Sons, Inc.*, 40 Cal. 3d

28   672 (1985), for the proposition that a pharmacy, in filling a prescription, performs a health care

16

United States District Court
Northern District of California

1    service, rather than selling a good, and should not be held strictly liable. *Id*. at 676. The *Murphy*

2    court's discussion "relate[d] only to the duties in a community pharmacy of a pharmacist who fills

3    prescriptions for drugs on the order of a physician or other medical care provider, and *who has*

4    *used due care* in compounding and labelling the drug." *Id*. (emphasis added).

5      But Kripke does not contend that Safeway has exercised due care, and he has not alleged

6    claims for strict product liability. *See, e.g.*, Compl. ¶ 69 ("Defendants have been at all times aware

7    that zolpidem has never been shown to be safe or to be effective for long-term use… .").[2] Kripke

8    alleges claims based on nuisance and unfair competition, forms of liability that *Murphy* did not

9    address. Defendants have not identified any cases extending *Murphy*'s holding to protect

10    pharmacies against any of these claims. They argue that these claims are not properly stated

11    against a pharmacy, *see* Oppo. at 19–21, but they fail to provide any support for these contentions.

12      On the other hand, Kripke underscores cases declining to extend Murphy beyond its

13    particular context. *See, e.g*., *Conte v. Wyeth, Inc.*, 168 Cal. App. 4th 89, 102, 85 Cal. Rptr. 3d 299,

14    310 (2008)(finding *Murphy*'s holding limited to strict products liability cases and declining to

15    apply it in the context of negligent misrepresentation); *White v. Stop & Shop Cos.*, 1998 U.S. Dist.

16    LEXIS 13663, at *6 (D. Conn. Aug. 17, 1998)(declining to apply *Murphy* to over-the-counter,

17    non-prescription drugs). Under the fraudulent joinder rule, defendants must show that Kripke's

18    failure to state a cause of action against a resident defendant is "obvious according to the settled

19    rules of the state." *McCabe*, 811 F.2d at 1339. Considering that "[f]ederal jurisdiction must be

20    rejected if there is any doubt as to the right of removal[,]" *Gaus*, 980 F.2d at 566, defendants have

21    not met their burden.

22      Finally, defendants urge that fraudulent joinder can be inferred based on evidence that the

23    intent of Kripke's counsel was to file claims only against Teva given that he promised not to

24    pursue discovery against Safeway. Oppo. at 19. But "it is universally thought that the motive for

25

26    [2] Kripke's FAC makes this inference explicit, *see* FAC ¶ 79-85, but the propriety of removal must
be determined by the allegations in the state complaint. *Williams*, 471 F.3d at 976. *But see*

27    *GranCare*, 889 F.3d at 550 ("If a defendant cannot withstand a Rule 12(b)(6) motion, the
fraudulent inquiry does not end there. ... the district court must consider, as it did in this case,

28    whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to
amend.").

1  joining such a defendant is immaterial." *Albi v. St. & Smith Publications*, 140 F.2d 310, 312 (9th

2  Cir. 1944). "It is only where the plaintiff has not, in fact, a cause of action against the resident

3  defendant, and has no reasonable ground for supposing he has, and yet joins him in order to evade

4  the jurisdiction of the federal court, that the joinder can be said to be fraudulent, entitling the real

5  defendant to a removal." *Id.* As discussed above, it cannot be said that Kripke "has no reasonable

6  ground" for stating a cause of action against Safeway. Accordingly, I cannot conclude that it has

7  been fraudulently joined. Complete diversity between the parties is lacking.

**CONCLUSION**

9  In accordance with the forgoing, defendants have not established a basis for federal

10  jurisdiction. This case is REMANDED to the Superior Court of California, County of San

11  Francisco.

12  **IT IS SO ORDERED.**

13  Dated: July 20, 2018

William H. Orrick
United States District Judge

18